Good morning, your honors. May it please the court, my name is Daniel Osborne and I represent appellant Keith Nursten. This case is an appeal from a complaint filed before the Eastern District challenging a finding of no disability by the Social Security Administration. Just as a reminder, we are not doctors looking for erroneous medical information, nor are we looking to challenge medical decisions. Speak right into the microphones, please. Thank you. Sorry about that, your honor. Rather, we're looking for errors of law by administrative law judges. That's what we do when we challenge these decisions. Keith Nursten, I'm proud to represent him. Mr. Nursten's a first responder, a New York City firefighter. He's in his mid-50s now. He was badly injured in a fire in 2010. A ceiling beam collapsed on his head, knocked him down a flight of stairs. A year later he retired from the firefighting department. And he's receiving disability from the fire department. He is, your honor. On June 22nd, 2011, approximately one year after his injury, Mr. Nursten filed an application for disability benefits. 2011, for anybody keeping track and doing the math, that's 13 years that Mr. Nursten has now been in the department. There are two errors of law that merit reversal of the lower court's disability determination or non-disability determination. I will address one of those bases for reversal. I'll merits reversal relates to Administrative Law Judge Suna, S-U-N-A, Suna's standing or eligibility. The dates of his involvement are important. I'm just going to go through a brief calendar. June 22nd, Mr. Nursten files the application for benefits. December 3rd of 2012, approximately 18 months later, James Kearns conducted the first hearing for Mr. Nursten's disability claim. He issued a decision that Mr. Nursten was not disabled. Are you getting to the Appointments Clause issue? Yes, I am. That's exactly where I'm heading on. Can I just start out by asking, this is, you didn't raise this until after the hearing. We had a Zoom conference with Judge Kovner, during which time she read her opinion. At the end of that reading, as is custom, probably 99 times out of 100, the judge was kind enough to offer us an opportunity to add anything else that we've had that we wanted to bring up. I mentioned the Ideally, yes, but I don't think it makes any difference in the long run. Actually, in the short run, it doesn't make any difference. I think the government is going to try and argue that it should have come before. But whether it comes two minutes after... But when the final decision was made by Suna that is appealing to us now, wasn't the I mean, originally, there was a problem, of course. But what happened after? I mean, after the Supreme Court acted, after, or actually, it got sent back by, within the Social Security, and wasn't the final one, by then, a proper Appointments Clause? ALJ Suna was on for a hearing, and a decision, and a subsequent hearing. Before that subsequent hearing could be decided, the Appointments Clause issue was resolved. So the only question is whether, in that And, you know, that not as a constitutional issue, really, is it? I mean, the circuits are split, but... Your Honor, the case did go back, but it went back to ALJ Suna. There have been five hearings altogether in this matter. ALJ Suna has presided over all three of the five, including hearings and opinions that occurred after... I'm trying to say, is your position that this does not stand, because even though when Suna decided it was constitutional, that it must go back to a different ALJ? Is that your position? Well, Your Honor, Judge Suna didn't determine that it was constitutional. That was done by Congress, I imagine. But... Yeah, I'm just asking, is it that you are arguing that it should go back to a different ALJ, even though Suna is now properly appointed? Yes, as we stand here is the original determinations. Since you failed to object at the time, we would be reviewing for plain error, and there is a circuit split on this issue. So doesn't that kind of foreclose your ability to prove plain error? It's at least an arguable proposition. Well, I think an argument could be made, Your Honor, consistent with what you've just said, but I think that would be a terrible, terrible injustice to Mr. Nerston, who has been through 13 years, five hearings, multiple decisions, not to mention what's happening offstage, which is, I spoke with him yesterday, multiple surgeries, he's had both hips replaced, broken back, shoulder surgery, he went back, he gets an annual physical from the 9-11 fund, he went back for MRIs and x-rays two weeks ago. Yeah, but now you are arguing something which I'm interested in, and which I'll push to the other side, that the ALJ decided incorrectly, but that's a very different question from the question of whether this was so clearly an inappropriate ALJ that we should find plain error for it. I mean, let's not confuse the two issues. Well, that's why, Your Honor, to be honest with you, that's why I didn't even mention it. I said there were two issues, I'm going to talk about one, and I want to push the other one to the side because I don't think it's relevant. But, Your Honor, to get back to whether it should have been raised earlier, sure, it could have been, but there's no mandate for that to be, there's no set time for that argument to be made. I was just asking because it affects our standard of review. Yeah. Okay, you've reserved a couple minutes for rebuttal. Yes, sir. So we'll hear from the Commissioner. Thank you, Judge. Good morning. May it please the Court. Sonia Carson for the Commissioner of Social Security. Substantial evidence supported the ALJ's conclusion that Mr. Nurston was capable of engaging in some substantial, gainful activity between 2011 and 2016. Did the ALJ ever specifically consider the mental handicap problems which he had because of 9-11 in conjunction with the physical harm that he had? That is, he said that the 9-11 mental harms were there, limiting, but not severe. That's what he said, not sufficiently severe in themselves. But did he ever consider them together with the physical damage which he did have, that by itself was not enough? That's my question, because if he did, okay. And then maybe we should vacate and remand on that issue, and then we probably don't need to worry about the other issue. The answer is yes, Your Honor, and I would point the Court to page 5 of the addendum to the Blue Brief Administrative Record, page 409. I'm quoting here, ALJ Suna says, he's given the benefit of any doubt to the claimant and has evaluated PTSD as an impairment. The ALJ concluded that this impairment did not have more than minimal impact, relying, including, on Mr. Nurston's own testimony that he goes to the beach, he watches ball games, he goes out independently, he maintains his own personal hygiene and household chores, he can recall seven digits forward and backward. The ALJ went on to say, and here I'm at, page 6 of the addendum to the Blue Brief, page 410 of the Administrative Record. The ALJ says explicitly that the residual functional capacity analysis reflects the mental function analysis that the ALJ had performed, again, giving Mr. Nurston the benefit of every doubt. At page 416 of the Administrative Record, and here I'm at, page 12 of the addendum to the Blue Brief, the ALJ says that he compared the residual functional capacity with, quote, The ALJ concluded in his 2019 decision that Mr. Nurston is both capable of returning to a form of substantial gainful activity in which he previously worked, and furthermore, at step five, that there exists a substantial number of jobs in the national economy that require performance, physical and mentally, that Mr. Nurston is capable of adjusting to and engaging in. We're here on substantial evidence review, and so the question, again, before the court is whether or not holistically, given the record as a whole, given the medical evaluations and Mr. Nurston's own testimony, whether the ALJ's decision that Mr. Nurston was not disabled, not incapable of working between 2011 and 2016, find substantial evidence in the record to support it, and our submission, Your Honor, is that it does. I think the panel's colloquy with Mr. Osborne shows that it understands the Appointments Clause issue, which has been forfeited as the court observed. I'm happy to answer any questions on that, but the decision here that's under review is the 2019 decision by ALJ Suna after any potential doubt in the constitutionality of his appointment was already eliminated, which happened by the ratification in July of 2018. I think I heard Mr. Osborne, pardon me, say that the Appointments Clause issue was resolved, and so I would commend the thorough opinion of the 11th Circuit in Raper to the court. We simply don't reach a question, even if we were to reach the merits on this forfeited issue, of whether or not a new ALJ is warranted, because there is no Appointments Clause defect in this decision. Thank you. Thank you, counsel. Mr. Osborne, you've reserved two minutes for rebuttal.  I don't have the citation directly at hand, but to show you how sensitive this issue can be, ALJ Suna in 2017 recognized there was a PTSD issue and sort of factored it into his decision. In 2019, he changed his mind, but nothing had changed in terms of the evidence. So you never know, it's sort of a pick and a poke on some of these causation issues and whether or not- So what you're saying is that he took it into account when he was unconstitutional, but didn't take it into account when he was constitutional? I'm not sure I can even follow that line of logic, but it sounds brilliant. Your Honor, I would also point out that people go through Social Security that are firefighters, police, other people with significant employment histories, and they come out wounded from these ALJ hearings and decisions because, for example, in this particular case, the work that was told might be acceptable for Mr. Nersten were- Here's the titles. Addresser, Ticket Checker, and Order Clerk. And I don't know if you followed any of Judge Brown's writings in this area, but he's in the Eastern District. He's just made a mockery of he, him, affirmatively, for the benefit of the whole industry, has started to question all of these jobs that people can supposedly do after they, you know, they're firefighters, they're business people. And now they're supposed to go sit in a token booth and collect tokens, and it just doesn't, it's not right. Especially for Mr. Nersten. I don't understand what you're saying. The question is, is there is a job that the person can do. We're not there to decide whether that's an attractive job for a former firefighter or not. That's not what, that's not before us. The standard is substantial activities, substantial employment activities. So you could argue about the meaning of substantial and whether it relates to the quality of the job or the title or what. But certainly there's some acknowledgment that some of these jobs are not even available anymore. And that's what Judge Brown has done, and challenging. Okay, thank you, counsel. Thank you. Thank you both. We'll take the case under advisement.